```
                      IN THE UNITED STATES DISTRICT COURT

                    FOR THE EASTERN DISTRICT OF CALIFORNIA


JUSTIN LANE,                    )        CIV S-03-1846 GEB CMK
                                )
               Plaintiff,       )        ORDER¹
                                )
     v.                         )
                                )
COUNTY OF BUTTE, BUTTE          )
COUNTY SHERIFF MACKENZIE,       )
an individual;²                 )
                                )
               Defendants.      )
                                )
```

Defendants County of Butte and Butte County Sheriff Mackenzie seek summary judgment on Plaintiff's claims. Plaintiff did not file an opposition to Defendants' motion but instead sought to continue the scheduled hearing date. For the stated reasons, Plaintiff's request is denied and Defendants' motion for summary judgment is granted.

REQUEST FOR CONTINUANCE

On April 8, 2005, Plaintiff filed an ex parte request for additional time to respond to Defendants' motion for summary judgment

---

[1] These matters were determined to be suitable for decision without oral argument. L.R. 78-230(h).

[2] Although the caption the movants used indicates the existence of "Doe" defendants in this action, the "Doe" defendants were dismissed in an Order filed November 25, 2003.

1

1  which was scheduled to be heard on April 18, 2005.  Plaintiff filed
2  this request four days after his opposition to the motion was due.
3  However, even if Plaintiff had filed the request on the date the
4  opposition was due, "Requests for Court-approved extensions brought on
5  the required filing date for the pleading or other document are looked
6  upon with disfavor."  L.R. 6-144(d).  Plaintiff's ex parte request
7  also failed to comply with Local Rule 6-144(c) since the request was
8  not supported by an affidavit of counsel.
9       Furthermore, the Rule 16 Scheduling Order states that "The
10 last hearing date for motions shall be April 18, 2005, at 9 a.m."
11 Plaintiff's request for additional time to respond to Defendants'
12 motion would require a continuance of the last prescribed Rule 16 law
13 and motion hearing date and therefore effectively sought an amendment
14 of the Scheduling Order.  Although Plaintiff's request for additional
15 time did not specifically request to modify the Scheduling Order, the
16 request may be deemed "a *de facto* motion to amend" the Scheduling
17 Order.  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th
18 Cir. 1992).
19       A Rule 16 Scheduling Order "shall not be modified except
20 upon a showing of good cause . . . ."  Fed. R. Civ. P. 16(b).  Since
21 Plaintiff's only stated reason supporting his extension request was
22 that his attorney committed an oversight by inadvertently failing to
23 timely file an opposition, Plaintiff has not shown good cause to amend
24 /////
25 /////
26 /////
27 /////
28 /////

the Scheduling Order.³  Therefore, Plaintiff's request for additional time to respond to Defendants' motion is denied.

## MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the nonmovant, and draw all reasonable inferences in that party's favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).  The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Id. (quoting Advisory Committee Note to 1963 Amendment of Fed. Rule Civ. Proc. 56(e), 28 U.S.C. App., p.626).

Even in the absence of an opposition to a summary judgment motion, it must be determined whether the unopposed motion successfully demonstrates no genuine issues of material fact exist that prevent granting the motion.  See generally, Martinez v. Stanford, 323 F.3d 1178 (9th Cir. 2003).

Plaintiff's complaint seeks relief under 42 U.S.C. § 1983 for an alleged violation of Plaintiff's Fourteenth Amendment

---

³ Plaintiff's application for an extension indicates that Plaintiff failed to carefully read the Rule 16 Scheduling Order.  Not only did Plaintiff fail to timely file an opposition, but Plaintiff also indicated in his application that he will be on vacation at the time of the scheduled Final Pretrial Conference, even though the Order prescribes trial counsel is required to attend the Final Pretrial Conference.

1 constitutional right based on Defendants' deliberate indifference
2 toward his medical needs while Plaintiff was incarcerated.  In the
3 parties' Joint Status Report, Plaintiff's counsel summarized
4 Plaintiff's claims as a "violation of [Plaintiff's] constitutional
5 rights due to the jail's indifference towards Plaintiff's medical
6 needs which resulted in Plaintiff swallowing razors on three occasions
7 while incarcerated."  (Pl.'s Joint Status Report filed Nov. 20, 2003,
8 at 1-2.)

The undisputed facts are as follows:[4]

1.   Plaintiff Justin Lane was arrested in late November of 2002 on charges of forgery and grand theft, and booked into the Butte County Jail on November 26, 2002.

2.   During the entire time of his incarceration, while at the Butte County Jail, Mr. Lane received medical services from the staff of the California Forensic Medical Group (CFMG), which contracts with the County of Butte to provide medical services for and to inmates housed in the Butte County Jail.

3.   The persons providing medical services to Mr. Lane were all employees of CFMG, not the employees of the County of Butte. No Butte County employee provided any medical services to Mr. Lane while he was incarcerated, including Scott Mackenzie.

4.   At the time of his booking, on November 26, 2002, a psychiatric assessment was undertaken of Mr. Lane by nurse Debbie

---

[4] The facts are set forth in the movants' Statement of Undisputed Facts filed on March 21, 2005, and are supported by the deposition of Plaintiff Justin Lane, and declarations of Don Durett, Gregory Einhorn, and Defendant Scott Mackenzie, as required by Local Rule 56-260.

4

Pautch, a CFMG employee. Mr. Lane was determined by nurse Pautch not to be at risk to himself and not suicidal.

5. On November 26, 2002, Mr. Lane signed a release for his Butte County Department of Behavioral Health records. The records were received via fax and reviewed on November 27, 2002. The most recent entry therein is September 20, 2002, where it is noted that Mr. Lane denies suicidal thoughts.

6. While he stated he was not suicidal when asked specifically by the medical staff of CFMG, in fact, he was suicidal.

7. After his booking, Mr. Lane asked to be assigned to a particular pod or section (A-pod) for protective custody; his request was granted and he was so assigned.

8. On November 28, 2002, without announcement or statement to any correctional staff, while in his A-pod cell, Mr. Lane swallowed a portion of an electric razor head because "he was suicidal at the time."

9. After Mr. Lane swallowed the razor head, he waited approximately 15 minutes and pressed the intercom to let an unknown and unidentified correctional officer know what Mr. Lane had done; Mr. Lane notified the correctional officer because he was afraid he "just might die."

10. Immediately after reporting this, additional officers responded, entered the cell, confiscated the rest of the razor head and called the medical staff.

11. Mr. Lane was transported to Oroville Medical Facility, a comprehensive hospital located in Oroville, California, and examined, all within 45 minutes.

5

12. Mr. Lane did not object to the Oroville Medical Hospital's attempts to remove the foreign object from him. Oroville Hospital medical personnel were unable to arthroscopically obtain the blade. Therefore it passed through him without any physical effects. Specifically, the foreign object was passed through his feces without incident on December 2, 2002.

13. Upon his return to Butte County Jail on December 1, 2002, Mr. Lane was placed on "suicide watch."

14. An inmate determined to be at potential risk to himself is placed on suicide watch. An inmate on suicide watch is housed in a single cell for his or her own protection. The inmate is provided with special clothing that cannot be used to harm himself or herself and is visually checked every 15 minutes.

15. Mr. Lane remained on suicide watch until December 3, 2002. On that date, Mr. Lane was personally seen (via video conference) by CFMG psychiatrist Dr. Blatt. Dr. Blatt is not an employee of the County of Butte. Dr. Blatt's medical judgment as he applied it to Mr. Lane was not influenced or directed by the County of Butte.

16. Mr. Lane told Dr. Blatt that he was not suicidal and was not depressed. In Dr. Blatt's opinion, Mr. Lane was "not depressed but rather tried to organize his life in custody by showing staff how serious he was about his housing. The patient is not suicidal in my opinion and will be released from the safety cell."

17. Mr. Lane has testified inconsistently regarding the veracity of his statements to Dr. Blatt. Initially, Mr. Lane testified that he agreed with Dr. Blatt's opinion that on December 3, 2002, he was not suicidal.

6

18. Subsequently, Mr. Lane testified that he remained suicidal but lied to staff when he said he was not.

19. At the time Mr. Lane was taken off of suicide watch on December 3, 2002, Mr. Lane was taking psychiatric medication for depression once a day and was not requesting additional medication.

20. After being taken off of suicide watch, Mr. Lane was moved from A-pod to F-pod.

21. At Mr. Lane's request, he was subsequently moved from F-pod to G-pod; then later from G-pod to P-pod.

22. Nurse Pautch performed a suicide evaluation on December 7, 2002, and determined that Mr. Lane was not a danger to himself. Mr. Lane told her: "No. I'm not going to hurt myself; I won't hurt other inmates or correctional officers."

23. On December 11, 2002, Dr. Levin, also a psychiatrist employed by CFMG, examined Mr. Lane and determined that Mr. Lane denied suicide ideation and was, instead, displeased about housing. Mr. Lane reported to Dr. Levin that he wanted to go to G-pod.

24. Dr. Levin agreed with Dr. Blatt that Mr. Lane was not suicidal or otherwise was a danger to himself.

25. On December 19, 2002, Mr. Lane, without notice to any staff, broke some disposable razors and swallowed some of the blades contained therein. Mr. Lane's deposition testimony reveals that the number of razor blades swallowed was either two, four or approximately four to six.

26. Within minutes after ingesting the foreign objects on December 19, 2002, Mr. Lane reported this to an unknown floor officer who was making the rounds.

27. The officer responded by informing the sergeant; Mr. Lane was subsequently transferred to Oroville Medical Facility.

28. Mr. Lane also testified that he swallowed Tylenol along with the razor blades; however, blood tests did not reveal the ingestion of Tylenol as claimed.

29. Mr. Lane asked for and provided consent for laproscopic surgery and the razor blades were then removed by laproscopic surgery.

30. Mr. Lane testified at his deposition that he still has some stomach pain from the surgery although "that's about all."

31. At the time Mr. Lane swallowed these foreign objects, he had been off of suicide watch for two weeks and had been seen in the interim by nurse Pautch and psychiatrist Dr. Levin. Mr. Lane had also been moved pursuant to his request from F-pod to G-pod and from G-pod to P-pod during that time.

32. Mr. Lane had been taking his psychiatric medicine on a daily basis while in A-pod, F-pod, G-pod and P-pod.

33. Mr. Lane remained at Oroville Medical Facility until December 25, 2002, when he was re-housed at the Butte County Jail.

34. After the surgery and while still in the hospital, Mr. Lane states that he went into the bathroom in his hospital room and ate pieces of a lightbulb and part of an aluminum seven-up can. These were passed without any physical effect.

35. From the time Mr. Lane was transported back to the Butte County Jail from Oroville Hospital he was on suicide watch continuously.

36. On January 1, 2003, Mr. Lane found razor blades hidden underneath a toilet in the cell in which he was housed. He ingested

these blades. He was not treated for this, save for an x-ray. The blades were passed without incident.

37. After Mr. Lane's release from Butte County Jail, he was transported to Mule Creek Prison. While at Mule Creek Prison, on two occasions in 2003, Mr. Lane swallowed muscle relaxers, Tylenol, codeine and razor blades. He was treated arthroscopically in both instances.

38. In December of 2004, while incarcerated at the Vacaville Medical Facility, Mr. Lane swallowed six razor blades with other medication.  Those razor blades also passed.

39. At no time did Scott Mackenzie personally participate in any way in the provision of medical services to Mr. Lane, nor did he personally participate in any observation of Mr. Lane when he was an inmate.

Defendants rely on the undisputed facts in support of their position that they did not violate Plaintiff's Fourteenth Amendment substantive due process right.  Defendants contend there was no constitutional violation since "there is no evidence that anyone . . . was deliberately indifferent to any serious medical need."  (Defs.' Mot. for Summ. J. at 10.)  According to Defendants, "Plaintiff not only did not ask for help, he denied it; moreover, he was repeatedly evaluated by psychiatric professionals who had reviewed his medical history and was receiving psychiatric medication."  (Id. at 10.) Furthermore, Defendants assert there was only one potentially serious medical need, which stemmed from a self-inflicted injury on December 19, 2002, and that Defendants did not act with deliberate
/////
/////

9

indifference to Plaintiff's medical needs as a result of that incident.[5]  (Id. at 9.)

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994).

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. . . . [A] prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently serious,'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.' For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

Id. at 834 (citations omitted). "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." Id. at 835. The "deliberate indifference" standard also applies to claims by pretrial detainees who are protected by the substantive due process clause of the Fourteenth Amendment. Redman v. County of San Diego, 942 F.2d 1435, 1442 (9th Cir. 1991) ("[Plaintiff's] status as a pre-trial detainee who may not be punished, therefore, does not preclude application of the standard.  We do not find it inappropriate that the

---

[5] Defendants assert that "The other incidents of plaintiff's intentional ingestion of foreign objects do not equate to serious medical needs because they were 'treated' by simply allowing the objects to pass harmlessly through the system." (Defs.' Mot. for Summ. J. at 9.)

10

1  same standard may be used under the fourteenth and eighth
2  amendments.").
3          Since the undisputed facts reveal that there is no genuine
4  issue of material fact regarding Defendants' deliberate indifference
5  to Plaintiff's serious medical needs, Defendants' motion for summary
6  judgment is granted.  Therefore, the Clerk of the Court shall enter
7  judgment in favor of Defendants.
8          IT IS SO ORDERED.
9  Dated:  April 21, 2005

                                   /s/ Garland E. Burrell, Jr.
                                   GARLAND E. BURRELL, JR.
                                   United States District Judge